UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

IN RE:

Debra Lea Middleton, and Rodger Dean Middleton,
Debtors.

Federal National Mortgage Association,

VS.

Debra Lea Middleton, and Rodger Dean Middleton

CHAPTER 13
CASE NO. 17-14554-MSH

## MOTION FOR RELIEF FROM STAY

To the Honorable Melvin S. Hoffman:

Federal National Mortgage Association, your moving party in the within Motion, hereby requests that the Court grant relief from the Automatic Stay imposed by 11 U.S.C. §362 and any applicable Co-debtor Stay imposed by 11 U.S.C. §1301 and respectfully represents:

1.     The movant has a mailing address of 14523 Millikan Way, Suite 200, Beaverton, OR 97005.

2.     The Debtors have a mailing address of 88 Quincy St, Brockton, MA 02302.

3.      On December 5, 2017, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

4.      The Chapter 13 plan has not been confirmed.

5.     The movant is the holder of a first mortgage on real estate in the original amount of $314,407.00 given by Debra L. Hart and Rodger D. Middleton to Mortgage Electronic Registration Systems, Inc. on or about April 25, 2005. Said mortgage is recorded in the Plymouth County Registry of Deeds at Book 30394, Page 290 as modified by a certain modification agreement executed on or about November 8, 2010 and covering the premises located at 88 Quincy St, Brockton, MA 02302. A copy of the mortgage, note, loan modification and assignment are annexed hereto and marked as Exhibit A.

6.     Said mortgage secures a note given by Debra L. Middleton and Rodger D. Middleton to Banknorth, N.A. in the original amount of $314,407.00.



7.      There is no other collateral securing the obligation.

8.      Said mortgage was subject to the following assignments:

- Mortgage Electronic Registration Systems, Inc. to Federal National Mortgage Association, recorded on November 1, 2017, in Book No. 49130, at Page 121

9.      There is a Declaration of Homestead recorded.

10.     As of September 11, 2018, approximately $270,198.83 in principal, interest, late fees and other charges was due with regard to Federal National Mortgage Association's note and mortgage.

11.     According to the Chapter 13 Plan, the subject property is being retained.

12.     There are the following encumbrances on the property:

| Name of Creditor | Type of Lien | Amount Owed |
|---|---|---|
| Movant | First lien | $270,198.83 |
| City of Brockton | Judgment Lien | $1,400.00 |
| Midland Funding | Judgment Lien | $3,411.00 |
| | Total Secured Encumbrances: | $275,009.83 |

13.     The pre-petition arrearage is $18,462.47.

14.     According to the Debtors' schedules, the fair market value of the subject property is $360,000.00. The liquidation value of the subject property is $336,258.40, calculated as the fair market value less a reasonable realtor's fee (6%); deed stamps $1,641.60 and anticipated costs incurred for a real estate closing of $500.00.

15.     The Debtors failed to remain current with the post-petition payments to Federal National Mortgage Association.

16.     The last post-petition payment received by the movant was a payment in the amount of $2,164.65, received on or about August 20, 2018, and was applied to the June 1, 2018 post petition payment.

17.     The total post-petition arrearage due as of September 11, 2018 is $4,331.85 excluding attorney's fees and costs. As a result of this motion, attorney's fees and costs of approximately $1,031.00 have accrued. This figure may increase as additional attorney's fees and costs continue to accrue.

18.     The total post-petition arrearage through the anticipated hearing on this motion would also include any additional monthly mortgage payments in the amount of $2,162.10, which payments are due on the first of every month.  The post-petition arrearage would also include any additional expenses, attorney's fees and costs that accrue from the date of the filing of this motion through the date of the hearing.

19.     The property is not necessary for a successful reorganization.

20.     The movant seeks relief from stay as a secured creditor to enforce its rights under its loan documents and applicable law. In support thereof, the movant states that it is entitled to relief as follows:

I.     Pursuant to 11 U.S.C. §362 (d)(1) for cause on the basis that the debtor has not made post petition payments, and that the debtor has failed to provide the plaintiff with adequate protection;


WHEREFORE, the movant prays that it, and its successors and/or assigns, be granted relief from the stay for the purpose of: (i) exercising its rights under its agreements with the debtor and any co-debtors under applicable law, including, without limitation, taking possession of the mortgaged premises and/or foreclosing or accepting a deed in lieu of foreclosure of its mortgage on said premises; (ii) preserving its right to seek any deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a); (iii) bringing such actions, including, without limitation, as are permissible by law; and (iv) that the Court order such other and further relief as may be just and proper.

Respectfully submitted,

Federal National Mortgage Association,
By its Attorney

/s/Joshua Ryan-Polczinski
Joshua Ryan-Polczinski
BBO#  678007
Harmon Law Offices, P.C.
PO Box 610389
Newton Highlands, MA 02461
(617)558-0500
mabk@harmonlaw.com

Dated: 10/01/2018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| IN RE:<br><br>Debra Lea Middleton, and Rodger Dean Middleton,<br><br>Debtors. | Case No. 17-14554-MSH<br>Chapter 13 |

<u>AFFIDAVIT OF SERVICE</u>

      I, Joshua Ryan-Polczinski, state that on October 1, 2018,  I served a copy of the Motion for Relief on the service list below by the service method indicated.

CM/ECF:

John Ullian
Carolyn A. Bankowski
John P. Fitzgerald III

FIRST CLASS MAIL POSTAGE PREPAID:

Debra Lea Middleton
88 Quincy St
Brockton, MA 02302

Rodger Dean Middleton
88 Quincy St
Brockton, MA 02302

Brockton Tax Collector
45 School St # 14
Brockton, MA 02301

Howard Lee Schiff P.C.
Attorney for Midland Funding, LLC
510 Trolland St.
East Hartford, CT 06126

CERTIFIED US MAIL

Martin Brophy
Treasurer for Town of Brockton
45 School St # 14
Brockton, MA 02301

James Brandon Black
CEO for Midland Funding, LLC
8875 Aero Drive  Suite 200

San Diego, CA 92123

Signed under the penalties of perjury, this First day of October. 2018.

Federal National Mortgage Association,
By its Attorney

/s/Joshua Ryan-Polczinski
Joshua Ryan-Polczinski
BBO#  678007
Harmon Law Offices, P.C.
PO Box 610389
Newton Highlands, MA 02461
(617)558-0500
mabk@harmonlaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

|  |  |
|---|---|
| IN RE:<br><br>Debra Lea Middleton, and Rodger Dean Middleton,<br><br>Debtors. | Case No. 17-14554-MSH<br>Chapter 13 |

## MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET
### (To be attached to Motion for Relief from Stay)

I, Shannon Dunn BK Specialist (Name and Title) of Seterus, Inc. as servicer for Federal National Mortgage Association (hereinafter, "Movant") hereby declare (or certify, verify, or state):

### BACKGROUND INFORMATION

1.    (a) Date chapter 13 petition was filed: December 5, 2017

    (b) Address of real property which is the subject of this motion: 88 Quincy St, Brockton, MA 02302

2.    (a) Original Mortgagee's Name and Address: Mortgage Electronic Registration Systems, Inc. PO Box, 2026, Flint, MI 48501-2026

    (b) Name and Address of Current Mortgage Holder: 14523 Millikan Way, Suite 200, Beaverton, OR 97005

    (c) Name of Note Holder, if different than Mortgage Holder: N/A

3.    Date of Mortgage: April 25, 2005

4.    Post-Petition payment address, if different than above: N/A

5.    The manner in which the Movant perfected its interest in the property: Recorded Mortgage

6.    Other Collateral securing the note: N/A

7.    Other liens and encumbrances affecting the property in the order of their priority:

| Names of Lien Holder | Amount Due | Source of Information (e.g., Schedules filed by Debtor(s), public records) |
|---|---|---|
| Movant's Lien | $270,198.83 | Estimated Payoff as of September 11, 2018 |
| Names of Junior Lien Holders | Amount Due | Source of Information |
| City of Brockton | $1,400.00 | Schedule D |

| | | |
|---|---|---|
| Midland Funding | $3,411.00 | Schedule D |

8.    Existence and Date of Recorded Homestead (if known): Recorded with said registry at Book 35508

and Page 38.

### DEBT/VALUE REPRESENTATIONS

9.    Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $270,198.83.

(Note: this amount may not be relied on as a "payoff" quotation.)

10.    (a) Movant's estimated fair market value of the real property: $360,000.00

(b) Source of estimated fair market valuation: Debtors' Schedule

(c) Liquidation value of the real property: $336,258.40.

### STATUS OF DEBT AS OF THE PETITION DATE

11.    (a) Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: $270,710.92.

(b) Amount of principal: $259,144.89.

(c) Amount of interest: $7,320.26.

(d) Amount of escrow (taxes and insurance): $2,473.99.

(e) Amount of forced placed insurance expended by Movant: $0.00.

(f) Amount of Attorney's fees billed to Debtor(s) pre-petition: $0.00.

(g) Amount of pre-petition late fees, if any, billed to Debtor(s): $0.00.

12.    Contractual interest rate: 4.00%. (If interest is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here):

13.    Explain any additional pre-petition fees, charges or amounts charged to the account of the Debtor(s) and not listed above: Fees, costs due: $1,771.78.

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF September 11, 2018 (09/11/2018)

14.    Date last payment was received:  08/20/2018.

15.    Total number of post-petition payments due from the date of the filing of petition through the date of this Motion or (09/11/2018):        9.

## SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT
(Do not substitute computer generated internal accountings):

| Payment Due Date | Amount of Payment Due | Amount of Payment Received | Date Payment Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged if any | Amount Not Applied |
|---|---|---|---|---|---|---|---|---|
| 7/1/18 | $2,164.65 | | | | | | | |
| 8/1/18 | $2,164.65 | | | | | | | |
| 9/1/18 | $2,164.65 | | | | | | | |
| Totals | $6,493.95 | $ | $ | $ | $ | $ | $ | $ |

16.     Amount of Movant's Attorneys' fees charged to Debtor to date for the preparation and filing of this Motion: $1,031.00.

17.     Other Attorneys' fees charged to Debtor post-petition: $0.00.

18.     Amount of Movant's post-petition inspection fees: $0.00.

19.     Amount of Movant's post-petition appraisal/broker's price opinion: $0.00.

20.     Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00.

21.     Sum held in suspense by Movant in connection with this contract, if applicable: $2,162.10.

22.     Amount of other post-petition advances or charges (e.g. real estate taxes, insurance): $0.00.

23.     Total amount of post-petition default, including all payments, fees, and charges: $5,362.85..

24.     Amount and date of post-petition payments offered by the Debtor(s) and refused by the Movant: Amount(s) $0.00;

       Date(s): N/A.

## REQUIRED ATTACHMENTS TO MOTION
Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1)     Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party.
(Exhibits_____A.)

(2)     Copies of documents establishing proof of standing to bring this motion if different from the above.
(Exhibits_____.)

(3)    Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits_____.)

**CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS**

The undersigned certifies that the information provided in this worksheet and any exhibits attached to this worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matter; and (b) were prepared and kept in the regular course of business.

In the event the Worksheet is not fully completed, Movant shall explain the reasons therefore and the reasonable efforts made to obtain the information:_____

_____.

The undersigned further certifies that copies of any transactional documents attached to this worksheet is required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows: _____.

I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.

_____          9.27.18
Signature                                 Date

Shannon Duren
Printed Name

Bankruptcy Specialist, Setens INC.
Title and Organization

Responses as to Questions 7 and 8

/s/Joshua Ryan-Polczinski                 10/01/2018
Joshua Ryan-Polczinski
Harmon Law Offices, P.C.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| IN RE:<br><br>Debra Lea Middleton, and Rodger Dean Middleton,<br><br>Debtors. | Case No. 17-14554-MSH<br>Chapter 13 |

### Order Granting Federal National Mortgage Association Relief From The Automatic Stay and Leave to Foreclose Mortgage

This matter has come before the Court, and after full consideration, and no objection having been filed after proper notice, it is hereby ordered that Federal National Mortgage Association, its Successors and/or Assigns, Motion for Relief From Automatic Stay is hereby granted and the stay imposed by 11 U.S.C. §362 and/or 11 U.S.C. §1301 is hereby terminated and it may proceed to foreclose or accept a deed in lieu of foreclosure of the mortgage given by Debra L. Middleton and Rodger D. Middleton to Mortgage Electronic Registration Systems, Inc. dated April 25, 2005. Said mortgage is recorded in the Plymouth County Registry of Deeds at Book 30394, Page 290 as modified by a certain modification agreement executed on or about November 8, 2010 and covering the premises located at 88 Quincy St, Brockton, MA 02302. Federal National Mortgage Association, its Successors and/or Assigns, may exercise its rights under said Mortgage, including preserving its right to seek any deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a), and may bring such actions, including, without limitation, eviction proceedings, as are permissible by law, all as set forth in its Motion.

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

17-14554-MSH



# Exhibit A

**Please Note:**
The Documents Appended Hereto Have Been Redacted
To Prevent Any Possible Disclosure of Personal and Private Information

Any Document Marked As A True And Correct Copy
Has Also Been Redacted For This Purpose

# REDACTED

Document Scanned

46342
Received & Recorded
PLYMOUTH COUNTY
REGISTRY OF DEEDS
25 APR 2005  11:15AM
JOHN R.BUCKLEY, JR.
REGISTER
Bk 30394 Pg 290-305

Return To:

Banknorth, N.A.
32 Chestnut St.
Lewiston, Maine 04240

STEVEN J. MURPHY, ESQ.
1646 CENTRE STREET
WEST ROXBURY, MA 02132

**ORIGINAL**

Prepared By:

Luzviminda Small
70 Gray Road
Falmouth, ME   04105

RECEIVED

MAY 1 8 2005

─────────── [Space Above This Line For Recording Data] ───────────

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **April 25, 2005** together with all Riders to this document.

**(B) "Borrower"** is **Debra L Hart, Rodger D Middleton**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022 1/01

VMP -6A(MA) (0411).01

Page 1 of 15                    Initials: _DLM_ _D.H_

VMP Mortgage Solutions (800)521-7291

*Return to:*
*STEVEN J. MURPHY*
*1646 CENTRE ST.*
*WEST ROXBURY, MA 02132*

Property Address:  88 Quincy Street, Brockton, MA  02302

**(D) "Lender"** is **Banknorth, N.A.**

Lender is a **National Bank**
organized and existing under the laws of **The United States of America**
Lender's address is **1 Portland Square, Portland, ME  04101**

**(E) "Note"** means the promissory note signed by Borrower and dated **April 25, 2005**
The Note states that Borrower owes Lender **Three Hundred Fourteen Thousand  And
Zero/100**                                                                     Dollars
(U.S. $ **314,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **May 01, 2035**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify]<br>Exhibit A |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| County | of | Plymouth | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction]: | |

**See Attached Schedule A**

Parcel ID Number:    156-153                                      which currently has the address of

88 Quincy Street                                                                                                [Street]

Brockton                                                [City] , Massachusetts 02302            [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: R. N. H

VMP -6A(MA) (0401).01                                  Page 3 of 15                                  Form 3022   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

 

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





Initials: ᴿ·ᵐᵃ ᴶ.H

VMP-6A(MA) (0401).01          Page 5 of 15          Form 3022   1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**





(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.





Initials: A.Pm. J.H.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _R.M._ _D.H_

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be



one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.





Initials: R.M. - D.H.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.





Initials: 

VMP®-6A(MA) (0401).01                    Page 13 of 15                    Form 3022   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
Steven J. Murphy

_____ (Seal)
Debra L Hart                    -Borrower

_____
Steven J. Murphy

_____ (Seal)
Rodger D Middleton             -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower




**COMMONWEALTH OF MASSACHUSETTS,**                    Suffolk      County ss:

    On this 25th    day of April, 2005            , before me, the undersigned notary public,
personally appeared Debra L Hart and Rodger D Middleton

proved to me through satisfactory evidence of identification, which was/were  a driver's license,
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires: October 11, 2007
(Seal)

Notary Public  Steven J. Murphy

STEVEN J. MURPHY
NOTARY PUBLIC - MASSACHUSETTS
SUFFOLK COUNTY
My Commission Expires 10-11-2007



## Exhibit A

The land in Brockton, Plymouth County, Massachusetts, with the buildings thereon, located on the easterly side of Quincy Street and being Lot 2 on "Plan of Lots at Prospect Heights, Brockton, Massachusetts, Scale 40 feet to an inch, February, 1946, Hayward and Hayward, Surveyors," which plan is recorded with Plymouth Registry of Deeds in Plan Book 6 Page 950.

Said land being more particularly described as follows:

Beginning at a point on the easterly side of Quincy Street, being the southwesterly corner of land of Howard Leavitt Horton, Sr. and Zilla Horton; thence southerly along the easterly side of North Quincy Street, 60 feet to the northwesterly corner of land of Robert E. and Elsie L. Madden; thence, easterly along the northerly line of said Madden property, 120 feet to land of the Davey Development Co., thence northerly along the westerly line of the Davey Development property, 60 feet to land of said Horton; thence, westerly along the southerly line of said Horton property, 120 feet to the point of beginning.

For Mortgagors' title see Deed David M. Doyle and Susan A. Doyle a/k/a Susan Doyle recorded with Plymouth County Registry of Deeds herewith.

# REDACTED

*** Electronic Recording ***
Doc#:  00096216
Bk: 49130 Pg: 121 Page: 1 of 1
Recorded: 11/01/2017 02:06 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

**MASSACHUSETTS**
COUNTY OF PLYMOUTH (REC)

LOAN NO.: 

Prepared By: Seterus, Inc.

WHEN RECORDED MAIL TO: SETERUS, INC.
14523 SW MILLIKAN WAY, SUITE 200
BEAVERTON, OR 97005
PH. 1(866)570-5277

# ASSIGNMENT OF REAL ESTATE MORTGAGE

FOR VALUE RECEIVED, receipt of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR BANKNORTH, N.A., ITS SUCCESSORS AND ASSIGNS**, located at P.O. BOX 2026, FLINT, MICHIGAN 48501-2026, Assignor, without representation, recourse or warranty, express or implied, does hereby assign, transfer, set over, grant, and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA**, located at **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254**, Assignee, its successors and assigns forever, that certain Mortgage dated **APRIL 25, 2005**, executed by **DEBRA L HART, RODGER D MIDDLETON**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR BANKNORTH, N.A., ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, and recorded on **APRIL 25, 2005** in Mortgage Book 30394 at Page 290 as Document No. 46342 in the Office of the  Register of Deeds  for the County of **PLYMOUTH (REC)**, State of **MASSACHUSETTS**.
Property Address: 88 QUINCY ST BROCKTON, MA 02302
TOGETHER with all rights accrued or to accrue under said Mortgage.
IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **OCTOBER 04, 2017**.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

CRISTINA GOMEZ, VICE PRESIDENT

STATE OF **IDAHO**          COUNTY OF BONNEVILLE     ) ss.
On **OCTOBER 04, 2017**, before me, **MELANIE MENDOZA**, personally appeared **CRISTINA GOMEZ** known to me to be the **VICE PRESIDENT** of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.



**MELANIE MENDOZA (COMMISSION EXP. 07/21/2022)**
NOTARY PUBLIC

MELANIE MENDOZA
NOTARY PUBLIC
STATE OF IDAHO

LB80401101M - FAM - MA                 **Page 1 of 1**                        MIN:
                                                                MERS PHONE: 1-888-679-6377

REDACTED

_____ [Space Above This Line For Recording Data] _____

L786A

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 8th day of November, 2010, between Debra
L Middleton and Rodger D Middleton ("Borrower") and IBM Lender Business Process Services, Inc. ("Servicer"),
and Mortgage Electronic Registration Systems, Inc. ("Mortgagee"), amends and supplements (1) the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
April 25, 2005 and recorded in Book or Liber 30394, at page(s) 290-305, Instrument Number 46342, of the
Plymouth County Registry Of Deeds Official Records of Plymouth County and (2) the Note, bearing the same date
as, and secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

88 Quincy St, Brockton, MA 02302,

the real property described being set forth as follows:

Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of December 1, 2010, the amount payable under the Note and the Security Instrument (the "Unpaid
    Principal Balance") is U.S. $314,407.76, consisting of the unpaid amount(s) loaned to Borrower by
    Servicer plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Servicer.  Interest will
    be charged on the Unpaid Principal Balance for the first five years at the yearly rate of 2% from November
    1, 2010, and Borrower promises to pay monthly payments of principal and interest in the amount of
    $1,206.83 beginning on the 1st day of December, 2010.  During the 6th year, interest will be charged at the
    yearly rate of 3% from November 1, 2015, and Borrower shall pay monthly payments of principal and
    interest in the amount of $1,342.14 beginning on the 1st day of December, 2015.  During the 7th year,
    interest will be charged at the yearly rate of 4% from November 1, 2016, and Borrower shall pay monthly
    payments of principal and interest in the amount of $1,480.39 beginning on the 1st day of December, 2016.

    During the 8th year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will
    be charged at the yearly rate of 4.25%, from November 1, 2017, and Borrower shall pay monthly payments
    of principal and interest in the amount of $1,514.81 beginning on the 1st day of December, 2017 and shall
    continue the monthly payments thereafter on the same day of each succeeding month until principal and

interest are paid in full. If on May 1, 2039, (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Servicer's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Servicer is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Servicer.

   (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d)    All costs and expenses incurred by Servicer in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Servicer.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or
required to effectuate the terms and conditions of this Agreement which, if approved and accepted
by Servicer, shall bind and inure to the heirs, executors, administrators, and assigns of the
Borrower.

_Busselaar_ (Seal)
-Servicer
**Charlene Busselaar**
**Loan Administration AVP**

By: _____

_____ (Seal)
-Borrower

_Debra Middleton_ (Seal)
-Borrower

_____ [Space Below This Line For Acknowledgments] _____

Subscribed & Sworn before me this 23 Day of March , 2010
By Roger Dunn Middleton
and Debra L. Middleton.

_____

JOHN J. GREELEY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 24, 2015

# ACKNOWLEDGMENT

State of Oregon

County of Washington

On __12/3/10__ before me, __Joshua M. Cook__ personally appeared **Charlene Busselaar** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

OFFICIAL SEAL
**JOSHUA M. COOK**
NOTARY PUBLIC-OREGON
COMMISSION NO. 441327
MY COMMISSION EXPIRES OCT. 13, 2013

Signature _____ (Seal)

Notary : _____

Exhibit "A"

The land in Brockton, Plymouth County, Massachusetts, with the buildings thereon, located on the easterly side of Quincy Street and being Lot 2 on "Plan of Lots at Prospect Heights, Brockton, Massachusetts, Scale 40 feet to an inch, February, 1946, Hayward and Hayward, Surveyors," which plan is recorded with Plymouth Registry of Deeds in Plan Book 6 Page 950.

Said land being more particularly described as follows:

Beginning at a point on the easterly side of Quincy Street, being the southwesterly corner of land of Howard Leavitt Horton, Sr. and Zilla Horton; thence southerly along the easterly side of North Quincy Street, 60 feet to the northwesterly corner of land of Robert E. and Elsie L. Madden; thence, easterly along the northerly line of said Madden property, 120 feet to land of the Davey Development Co., thence northerly along the westerly line of the Davey Development property, 60 feet to land of said Horton; thence, westerly along the southerly line of said Horton property, 120 feet to the point of beginning.

For Mortgagors' title see Deed David M. Doyle and Susan A. Doyle a/k/a Susan Doyle recorded with Plymouth County Registry of Deeds herewith.

Also Known As: 88 QUINCY ST, BROCKTON, MA

12370680 MIDDLETON

*L789A*



_____[Space Above This Line for Recording Data]_____

# ESCROW AGREEMENT

This Escrow Agreement ("Agreement"), made on November 8, 2010 between Debra L Middleton and Rodger D Middleton ("Borrower") and IBM Lender Business Process Services, Inc. (LBPS) is entered into in connection with Borrower's promissory note dated April 25, 2005 ("Note"), and the Loan Modification Agreement dated November 8, 2010 between the parties ("Modification Agreement"), which is secured by the following real property ("Property").

88 Quincy St
Brockton, MA 02302

For valuable consideration, the parties agree as follows:

1.  In addition to the monthly payment that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay LBPS a monthly escrow payment in the amount of $702.84 for deposit into an escrow account for necessary payments to be made by LBPS, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, LBPS may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.

2.  Each Escrow Payment shall be due on the same day of the month as the monthly payment due under the Modification, commencing December 1, 2010.

3.  In the event Escrow Payments are not made and LBPS advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

4.  Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, LBPS may exercise its rights under the Note and Modification Agreement.



ESCROW AGREEMENT

*(page 1of 2)*

5.  Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by LBPS, LBPS shall not be required to pay any interest or earnings on the payments held.

IBM Lender Business Process Services, Inc.

By: _CBusselaar_

**Charlene Busselaar**
**Loan Administration AVP**

_____
Borrower

_Debra Middleton_
_____
Borrower

_____ [Space Below This Line For Acknowledgments] _____

Subscribed and sworn before me this 23 Day of November, 2011
by Roger Dean Middleton
and Debra L. Middleton.

JOHN J. GREELEY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 24, 2015

ESCROW AGREEMENT

(page 2 of 2)



# ACKNOWLEDGMENT

State of Oregon

County of Washington

On _12/3/10_ before me, _Joshua M Cook_ personally appeared
**Charlene Busselaar** who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

> OFFICIAL SEAL
> **JOSHUA M. COOK**
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 441327
> MY COMMISSION EXPIRES OCT. 13, 2013

WITNESS my hand and official seal.

Signature _____ (Seal)

Notary : _____





**REDACTED**

# NOTE

April 25, 2005                    West Roxbury                    MASSACHUSETTS
[Date]                               [City]                               [State]

88 Quincy Street, Brockton, MA  02302

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 314,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is **Banknorth, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          **6.625 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**      day of each month beginning on **June 01, 2005**          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on **May 01, 2035**          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 5400, Lewiston, ME  04241**
                                                   or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,010.58          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(VMP)-5N (0207).01                    Form 3200 1/01
         VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials: D.H., R.Om

Mers MIN#:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



-5N (0207).01

Page 2 of 3

Form 3200 1/01
Initials: A.H. · B.Om

Mers MIN#:

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Debra L. Hart_ _____ (Seal)        _Rodger D. Middleton_ _____ (Seal)
**Debra L Hart**                -Borrower        **Rodger D Middleton**           -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                        -Borrower

_____ (Seal)        PAY TO THE ORDER OF: _____ (Seal)
                               -Borrower                                        -Borrower

                                              WITHOUT RECOURSE
                                              BANKNORTH, N.A.

                                              BY: _____
_____ (Seal)        RICHARD W. GILBERT              (Seal)
                               -Borrower      LOAN OPERATIONS SUPERVISOR      -Borrower

Witness

                                              [Sign Original Only]

_____
Steven J. Murphy

VMP-5N (0207).01                     Page 3 of 3                          Form 3200 1/01

Mers MIN#: ██████████████

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| IN RE:<br><br>Debra Lea Middleton, and Rodger Dean Middleton,<br><br>Debtors. | Case No. 17-14554-MSH<br>Chapter 13 |

## CERTIFICATE OF CONFERENCE

I, Joshua Ryan-Polczinski, hereby state that on September 21, 2018 a letter requesting a conference pursuant to LBR 13-16-1(a) was sent to the Debtor's counsel, John A. Ullian, with regards to his client's post petition default on mortgage payments. On September 28, 2018 at approximately 1:27 p.m., conference was completed via electronic message. Since that date the parties have not yet been able to reach a resolution.

Respectfully submitted,

Federal National Mortgage Association,
By its Attorney

/s/Joshua Ryan-Polczinski
Joshua Ryan-Polczinski
BBO#  678007
Harmon Law Offices, P.C.
PO Box 610389
Newton Highlands, MA 02461
(617)558-0500
mabk@harmonlaw.com

Dated: 10/01/2018

